# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3443
_____

United States of America

*Plaintiff - Appellee*

v.

Paul Peter Swehla

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: June 12, 2023
Filed: October 2, 2023
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

In 2005, Paul Peter Swehla was convicted of distributing morphine within 1000 feet of a school. He was sentenced to 262 months imprisonment followed by 6 years of supervised release. Swehla began supervised release in September 2021. On October 24, 2022, he was arrested and charged in Iowa state court with Domestic Abuse Assault for pushing his fiancée, Jessamyn Johnson, into a wall while inebriated. Ms. Johnson requested a no-contact order. The United States Probation

Office filed a petition to revoke supervised release that day. On October 28, the Iowa court, consistent with an Affidavit of Complaining Witness re: Lifting No Contact Order filed by Ms. Johnson, issued an Order of Protection ("State Court Order") prohibiting Swehla from communicating with Ms. Johnson, except "via telephone and text regarding billing, inventory and financial information regarding the restaurant they run together."

On November 1, Probation filed an amended petition to revoke supervised release, alleging four violations -- using alcohol, failing to participate in substance abuse testing, and new law violations including the domestic assault of his fiancée, Ms. Johnson. The sentencing recommendation included 8 months imprisonment followed by 120 days in a Residential Reentry Center, 3 years of supervised release, and a new proposed Special Condition 8 prohibiting all communication between Swehla and Ms. Johnson during the term of supervised release. Swehla filed a Notice of No Contested Violations stating that he would not contest the four alleged violations and agreed with the recommended 8 months imprisonment and 4 months in a reentry center. However, noting that the State Court Order provided that Swehla and Ms. Johnson could communicate "via telephone and text regarding . . . the restaurant they run together," Swehla requested "that the Condition 8 be modified to require Mr. Swehla to follow any no contact order filed in [the state court action]."

In a Status Report on Special Condition 8 filed the day before the revocation hearing, Swehla stated that victim Johnson "has requested that the no contact order . . . track the no contact order entered" by the state court. Without that modification, Swehla argued, the "blanket restriction" in Special Condition 8 is overbroad and violates "his fundamental liberty interest" in marrying Ms. Johnson:

> [W]here, as here, the victim requests that the condition track the no
> contact order in state court, the special condition would restrict liberty
> more than necessary. The State court is perfectly capable of ensuring

that any restriction or any decision to lift the restriction is based upon the victim's preferences.

At sentencing, the government advised that the victim "has indicated that she would like the condition to correspond to the state court no-contact order, which essentially is that they may communicate via telephone and text regarding billing, inventory, and financial information with regard to the restaurant that they run together." The government argued that the record supports the no-contact order "as written," but "if the Court feels that the victim's wishes as portrayed . . . [are] appropriate, the modification of that condition, the government does not oppose that." In response to a question by the district court, the Probation Officer advised that Swehla owns the restaurant and his fiancée "manages the day-to-day and . . . financial and bookkeeping stuff." Defense counsel then noted that Swehla and Ms. Johnson are engaged to be married and argued:

> I would also note that the State of Iowa no-contact order has reflected whatever the victim's preferences were, allowing this particular contact related to the business. . . . [I]n terms of that language in condition 8 . . . if we could put in there if there's any discretion or need on the part of probation for no contact whatsoever based on the victim's preferences, we have no objection to that either. . . . [W]e'd simply ask that the Court reflect what her preferences are relating to what's already been done in the State court. [That] would be the least restrictive condition in terms of liberty interests.

The district court[1] noted that the no-contact condition would not be in effect while Swehla is in the custody of the Bureau of Prisons, and that the restaurant "may not even be in existence" when Swehla is released:

---

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

-3-

So perhaps one way to handle this is to say in the no-contact order if the business . . . . is still operating, then they can have contact, and then you could mirror the language of the State court no-contact order. But I want to make it clear that victims do not dictate no-contact orders. Judges do based on what they see as the risk to the victim and the rest of the public.

After hearing lengthy allocution by Mr. Swehla and addressing at length the relevant revocation sentencing factors, see 18 U.S.C. § 3583(e), the district court ruled:

[T]he Court finds that revocation is entirely appropriate and totally supported by the record here. I agree with the probation office that 8 months in prison followed by 3 years of supervised release is appropriate. With regard to the special condition . . . number 8 . . . we've talked about how I would like that modified so that the contact only exists if the restaurant is still an operating business. And I'll ask that [probation] change the language a little bit for me . . . . And if you have any questions, you could run it by the two attorneys, and they can put their two cents in so that it's the way that apparently the victim wants it.

. . . The Court has modified condition 8, the no-contact order, as we have discussed. And if the parties object when it's finally written out, please let me know and we'll try to arrive at appropriate wording.

The following day, the district court entered its Judgment in a Criminal Case, including in the Special Conditions of Supervision:

8. Except as specifically provided herein, defendant must not have contact during his term of supervised released with Jessamyn Johnson, in person or through a third party. This includes no in-person contact and no direct or indirect contact by mail, email, or by other means. However, defendant may have telephone contact (including text messaging) with Jessamyn Johnson for the exclusive purpose of discussing billing, inventory, and financial information relating to the Artesian Ghost

-4-

Kitchen restaurant. The United States Probation Office may contact Jessamyn Johnson to determine whether the defendant is in compliance with this condition.

Swehla did not object to the wording of Special Condition 8, either before or after the entry of Judgment. He now appeals the revocation sentence, arguing the district court erred in imposing an overly broad no-contact order restricting communication between Swehla and his fiancée. We conclude this issue was not preserved for appeal.

On appeal, Swehla argues the district court failed to consider a less restrictive alternative -- his request that the federal no-contact order "track" the State Court Order. However, at sentencing Swehla noted "that the State of Iowa no-contact order has reflected whatever the victim's preferences were, allowing this particular contact related to the business," and then requested "that the Court reflect [in Special Condition 8] what her preferences are relating to what's already been done in the State court." The district court granted that request, modifying Special Condition 8 to permit communication between Swehla and Ms. Johnson regarding the restaurant they run together, incorporating almost word for word the only "additional directive" the State Court Order added at Ms. Johnson's request. So this issue was waived. "On appeal, [Swehla] cannot complain that the district court gave him exactly what his lawyer asked." United States v. Thompson, 289 F.3d 524, 526 (8th Cir. 2002) (citation omitted).

Swehla further argues that Special Condition 8 is overbroad "because it provides no discretion to modify the conditions based upon the preferences of Ms. Johnson." At sentencing, Swehla's counsel did not clearly request that Special Condition 8 provide that any *future* modifications of the State Court Order based on Ms. Johnson's "preferences" would apply to this federal no-contact order. However, Swehla's pre-hearing Status Report on Special Condition 8 appeared to take that position when it argued that "[t]he State court is perfectly capable of ensuring that

any restriction or any decision to lift the restriction is based upon the victim's preferences." And at sentencing, the district court addressed -- and rejected -- that contention: "But I want to make it clear that victims do not dictate no-contact orders. Judges do based on what they see as the risk to the victim and the rest of the public."

At the end of the hearing, the court stated it would modify Special Condition 8. The court directed Probation to prepare and circulate revised language to counsel for both parties, and stated, "if the parties object when it's finally written out, please let me know and we'll try to arrive at appropriate wording." Swehla made no objection to the final wording of Special Condition 8, either before or after Judgment was entered.

We have repeatedly held that "[w]hen a party agrees to an instruction, the doctrine of invited error applies, and any objection to the instruction is waived." United States v. Davis, 826 F.3d 1078, 1082 (8th Cir. 2016); see generally United States v. Mariano, 729 F.3d 874, 880-82 (8th Cir. 2013). The invited error issue arises most frequently when jury instruction error is argued on appeal, as in United States v. Pickens, 58 F.4th 983, 989-90 (8th Cir. 2023). Here, the situation is somewhat different because it was the district court that "invited," indeed directed, Swehla to raise with the court any objections he had to the modified Special Condition 8, such as this objection that he raises on appeal. We conclude the principle applies -- Swehla by failing to accept the court's invitation to object failed to preserve the issue for appeal. The failure was hardly inadvertent, so the alleged "error" is not subject to plain error review. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2002) (en banc), cert. denied, 546 U.S. 909 (2005).

Swehla, with a long history of alcohol abuse, admitted he assaulted Ms. Johnson while he was literally falling down drunk. By limiting contact, Special Condition 8 seeks to protect the victim from further harm. Ms. Johnson had requested a no-contact order from the state court, subject to a specific exception the

district court incorporated in Special Condition 8.  Our sister circuits have upheld similar supervised release conditions.  <u>See, e.g.</u>, <u>United States v. Santos Diaz</u>, 66 F.4th 435, 448-50 (3d Cir. 2023) (special condition prohibiting communication with the defendant's fiancée); <u>accord</u> <u>United States v. Rafferty</u>, No. 21-2760, 2022 WL 1531921 (8th Cir. 2022) (unpublished).  Should circumstances change, the district court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release."  18 U.S.C. § 3583(e)(2).

The judgment of the district court is affirmed.

_____